COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| EL PASO COMMUNITY COLLEGE, | § | No. 08-08-00174-CV |
|  | § |  |
| Appellant, | § | Appeal from |
|  | § |  |
| v. | § | 168th District Court |
|  | § |  |
| ANTONIO LAWLER, | § | of El Paso County, Texas |
|  | § |  |
| Appellee. | § | (TC # 2006-206) |
|  | § |  |

## **O P I N I O N**

This is an interlocutory appeal taken by the El Paso Community College District from an order denying its plea to the jurisdiction. We affirm.

### **FACTUAL SUMMARY**

Antonio Lawler, who is Hispanic, began working for El Paso Community College District (EPCC) in 1984 as a part-time, non-credit welding instructor. Until 2004, EPCC offered only non-credit welding courses. In 2004, EPCC began offering credit courses in welding which could lead to an associates degree in Machining Technology. EPCC assigned Lee Lowers, a non-Hispanic, to teach the credit courses and Lawler continued teaching the non-credit courses. In the summer of 2004, the credit and non-credit classes were combined due to low enrollment and Lowers was assigned to teach the combined class. On June 10, 2004, Lawler sent a written memorandum to the ATC[1] Director, Carrie Powell, complaining that he had been scheduled to teach the course and it was instead given to Lowers. Lawler expressed his belief that the decision was made because of his

---

[1] ATC is the abbreviation for Advanced Technology Center.

national origin and he filed an EEOC complaint. EPCC subsequently determined that neither Lowers nor Lawler was credentialed to teach the course. Powell recommended Lawler for credential exception to the Faculty Credentials Review Committee (FCRC), but the FCRC rejected Lawler's application on August 18, 2004. In response to that decision, Lawler filed a retaliation charge with the EEOC. Vice President Yolanda Ahner reviewed Lawler's records and substituted course work in order for Lawler to qualify for a certificate of completion from EPCC. Through the efforts of Ahner, Lawler obtained his college-level certificate in November 2004 and he taught a credit welding course beginning in January 2005.

In September 2005, Craig Acuna provided Lawler with a new syllabus for the credit welding course which he had drafted. The following month, the new ATC Director, Jose Canales, asked Lawler whether he was using Acuna's syllabus. Lawler responded that he had distributed the syllabus to the class but it could not be used to teach the students what they needed to learn. Lawler was instead using his own syllabus from the non-credit welding course. Canales ordered Lawler to use the new syllabus. The following day, Lawler resigned because he felt that use of the syllabus rendered the employment conditions intolerable.

Lawler filed suit on January 13, 2006, complaining EPCC discriminated against him because of his Hispanic national origin when it did not accept his credentials to teach credit welding courses, earmarked his faculty credentials form to prevent him from teaching credit welding courses, assigned him to teach only non-credit courses, and combined his non-credit class with a credit class to be taught by a non-Hispanic instructor. Lawler also alleged that EPCC retaliated against him for filing a discrimination complaint by not hiring him to teach welding courses, by requiring him to apply for alternative credentials, and by requiring him to use the new syllabus when teaching the credit welding course in the Fall of 2005. The following month, Lawler filed a third EEOC charge

alleging age discrimination and retaliation. On December 15, 2006, EPCC filed a plea to the jurisdiction on the ground that because Lawler had failed to state a *prima facie* case of discrimination under Chapter 21 of the Texas Labor Code, its sovereign immunity had not been waived.[2] On July 5, 2007, Lawler amended his petition to include the age discrimination claim raised in the third EEOC charge. The trial court denied the plea to the jurisdiction and EPCC filed notice of appeal.[3]

## EMPLOYMENT DISCRIMINATION

In two issues, EPCC argues that the trial court erred by denying its plea to the jurisdiction because Lawler failed to "plead or present facts to establish discrimination" on the basis of national origin, age, or retaliation.

### *Sovereign Immunity*

Sovereign immunity deprives a trial court of subject-matter jurisdiction of lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (2004). The Texas Commission on Human Rights Act provides a limited waiver of sovereign immunity when a governmental unit has committed employment discrimination on the basis of race, color, disability, religion, sex, national origin, or age. *See* TEX.LABOR CODE ANN. § 21.051 (Vernon 2006)(prohibiting unlawful employment practices by "employer"); § 21.002(8)(D)(Vernon Supp. 2010)(defining "employer" to include a county, municipality, state agency, or state instrumentality).

---

[2] In the motion, EPCC noted that Lawler's third EEOC charge had been decided adversely to him but he had not yet filed suit with respect to that charge.

[3] We ordered the parties to mediate but mediation was unsuccessful. EPCC later filed a motion to abate the appeal and remand to the trial court for the parties to address issues raised during the mediation because EPCC represented in its motion that it would possibly facilitate settlement of the case. We granted the motion and abated the appeal. In the subsequent trial court proceedings, EPCC offered additional evidence related to its plea to the jurisdiction and the trial court reconsidered EPCC's plea to the jurisdiction. The trial court again denied the plea to the jurisdiction and we reinstated the appeal.

*Plea to the Jurisdiction*

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plaintiff has the burden to allege facts that affirmatively demonstrate that the trial court has subject matter jurisdiction. *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 446 (Tex. 1993); *Gomez v. Housing Authority of the City of El Paso*, 148 S.W.3d 471, 477 (Tex.App.--El Paso 2004, pet. denied). When a plea to the jurisdiction challenges the pleadings, we construe the pleadings liberally in favor of the plaintiff and review *de novo* whether the plaintiff has met his burden. *Miranda*, 133 S.W.3d at 226; *Texas Department of Criminal Justice v. Cooke*, 149 S.W.3d 700, 704 (Tex.App.--Austin 2004, no pet.). When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. *Miranda*, 133 S.W.3d at 227; *Cooke*, 149 S.W.3d at 704. In some cases, the issue is whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction. *Miranda*, 133 S.W.3d at 226. This is also a question of law subject to *de novo* review. *Id.* at 226. But in other cases, there can exist disputed evidence of jurisdictional facts which also implicates the merits of the case. *Id.* at 227. In that instance, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If a fact issue exists, the trial court cannot grant the plea to the jurisdiction and the fact issue must be resolved by the fact finder. *Id.* at 227-28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This standard mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Id.* Where the pleading requirement has been met and evidence has been submitted that implicates the merits of the case, we take as true all evidence

favorable to the nonmovant. *Id.* We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

*Purported Challenge to the Pleadings*

We will first address EPCC's purported challenge to Lawler's pleadings. Although EPCC includes a challenge to the pleadings in its statement of Issue Two, it does not specifically address this argument in the body of the brief. Instead, EPCC focuses its entire argument on the evidence submitted in support of its challenge to the jurisdictional facts. Rule 38.1(I) requires the brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX.R.APP.P. 38.1(I). In the absence of any analysis of Lawler's pleadings or argument related to their adequacy, we find that this aspect of Issue Two is inadequately briefed.

*Challenge to the Jurisdictional Facts*

In its plea to the jurisdiction, EPCC challenged the existence of certain jurisdictional facts. In discrimination cases based upon circumstantial evidence, the plaintiff must first establish a *prima facie* case. *Bowen v. El Paso Electric Company*, 49 S.W.3d 902, 908 (Tex.App.--El Paso 2001, pet. denied). The plaintiff must demonstrate: (1) he is a member of a protected class; (2), he suffered an adverse employment action; (3) he was qualified for the job he held; and (4) he was replaced by someone not in his protected class. *Id.* In establishing a *prima facie* case, the plaintiff is only required to make a minimal showing. *Id.* at 908-09. Lawler is required to assert a *prima facie* case of national origin and age discrimination for the trial court to have subject matter jurisdiction over his claim.

If the plaintiff is successful in establishing a *prima facie* case, the burden of production shifts to the employer to produce evidence that the plaintiff was terminated for a legitimate,

nondiscriminatory reason. *Id.* at 909. This burden is one of production only, not persuasion, involving no credibility assessment. *Id.* Once the employer articulates a legitimate nondiscriminatory reason for the adverse job action, the plaintiff may prove discrimination by showing "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*, *quoting Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000). The plaintiff may do this by showing that the employer's proffered explanation is unworthy of credence. *Id.*

*National Origin Discrimination Claim - Qualification Element*

It is undisputed that Lawler is a member of a protected class and he was not assigned to teach the credit welding course in May 2004. EPCC contended in its plea to the jurisdiction that Lawler was not qualified to teach the credit welding course at that time. If EPCC is correct, Lawler cannot maintain his discrimination claim.

Lawler received a certificate of completion in welding from the East Los Angeles Skills Center in 1981. EPCC attached to its plea to the jurisdiction an affidavit of Nancy Nelson, Associate Vice-President for Employee Relations of EPCC. She stated that the qualification requirements for teaching credit welding courses are greater than the qualification requirements for teaching non-credit classes. To be qualified to teach a credit welding class, an instructor must have the minimum of a certificate of completion in welding from a post-secondary institution. According to Nelson, neither Lawler nor Lowers had the required certificate of completion. EPCC determined in 2003 that Lowers was qualified to teach the credit welding course because he had a Texas Teachers Certificate which his supervisors accepted as being equivalent to a Bachelor's degree. She admitted that Lawler had a Texas Teachers Certificate but claimed he did not submit it in 2003 as part of his faculty credentialing materials and he had not submitted it by May 2004. Lawler presented evidence that

he had submitted his Texas Teachers Certificate to EPCC twice in 2003 and again in early 2004. It was not until after Lawler voiced his national origin discrimination complaint and brought to EPCC's attention that he had a Texas Teachers Certificate that EPCC reconsidered the propriety of qualifying an instructor based on a Texas Teachers Certificate. At that point, EPCC determined that a Texas Teachers Certificate is not the equivalent of a Bachelor's degree.

The issue is not what qualification standard applied after the alleged discriminatory act but what standard applied at the time it occurred. EPCC established with its own evidence that an instructor could qualify to teach a credit welding course in May 2004 if he possessed a Texas Teachers Certificate. Lawler offered evidence that he had a Texas Teachers Certificate and he had provided it to EPCC in 2003 and early 2004. This evidence is sufficient to create a fact issue as to whether Lawler was qualified to teach the credit welding course under the qualification standard utilized by EPCC in May 2004. The existence of this fact issue would preclude the granting of EPCC's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227-28.

*Age Discrimination and Retaliation - Adverse Employment Action Element*

EPCC next argues that sovereign immunity is not waived with respect to Lawler's age discrimination and retaliation claims because, with the exception of constructive discharge, the actions he complains of are not adverse employment actions. In his second amended petition, Lawler based his age discrimination claim on allegations that his age was a motivating factor in EPCC's decision (1) to exclude him from a meeting with Jose Canales where expectations of the faculty was discussed, (2) to require him to attend a private meeting with Canales, and (3) to require him to follow the course syllabus. Lawler also asserted that he was constructively discharged. In connection with his retaliation claim, Lawler alleged that EPCC retaliated against him for filing a discrimination complaint by requiring him to apply for alternative credentials, and by requiring him to use the new syllabus when teaching the credit welding course in the Fall of 2005. He again alleged he was constructively discharged.

An employment discrimination claim requires that the plaintiff prove that he suffered an adverse employment action. *See Bowen*, 49 S.W.3d at 908 (stating elements of employment discrimination claim under TCHRA). Likewise, a retaliation claim made under Section 21.055 of the Texas Labor Code requires the plaintiff to make a *prima facie* showing that he suffered an adverse employment action. *See Bartosh v. Sam Houston State University*, 259 S.W.3d 317, 329 (Tex.App.--Texarkana 2008, pet. denied); *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex.App.--Houston [14th Dist.] 2007, pet. denied). To prove that a challenged action constitutes an adverse employment action, the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345

(2006); *Niu v. Revcor Molded Products Company*, 206 S.W.3d 723, 731 (Tex.App.--Fort Worth 2006, no pet.)(applying *Burlington* standard to retaliation claim under TCHRA). The requirement that an action be "materially adverse" exists to separate significant from trivial harms, such as "petty slights, minor annoyances, and simple lack of good manners." *Burlington*, 548 U.S. at 68; *Niu*, 206 S.W.3d at 731. The action is judged from the standpoint of a reasonable employee because the standard for judging harm must be objective. *Id*. The standard is general because the significance of any given act of retaliation will often depend upon the particular circumstances. *Id*.

Lawler does not argue on appeal that exclusion from a meeting, required attendance at a meeting, or being required to use a new syllabus are adverse employment actions under *Burlington's* standard. We find as a matter of law that a reasonable employee would not have found the challenged actions materially adverse because they would not dissuade a reasonable worker from making or supporting a charge of discrimination. However, Lawler also alleged he was constructively discharged. Constructive discharge is an adverse employment action under *Burlington*.

EPCC challenges Lawler's claim of constructive discharge. A constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign. *See Baylor Univ. v. Coley*, 221 S.W.3d 599, 604-05 (Tex. 2007), *citing Pennsylvania State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342, 2351, 159 L.Ed.2d 204 (2004); *Hammond v. Katy Independent School District*, 821 S.W.2d 174, 177 (Tex.App.--Houston [14th Dist.] 1991, no writ). Many factors are relevant to the consideration of whether the plaintiff was constructively discharged, including evidence of badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation. *Davis v. City of Grapevine*, 188 S.W.3d 748, 766 (Tex.App.--Fort Worth2006, pet. denied). Even accepting Lawler's pleadings as true, his allegations

related to the employment conditions do not state a *prima facie* case that the conditions were so intolerable that an employee would reasonably feel compelled to resign.

We have also examined the evidence related to Lawler's pleadings of constructive discharge to determine if Lawler can establish a *prima facie* case of constructive discharge. In his affidavit, Lawler related that in the summer of 2005, he was assigned to teach a welding course for the fall semester. On September 2, 2005, the ATC director, Jose Canales, met with the faculty but Lawler did not attend because he had not been notified about the meeting. Lawler stated in his pleadings that Canales met with the faculty on this date to discuss his expectations of the faculty. Lawler also described in his affidavit how Canales met with him on September 19, 2005 for the same purpose but Canales never discussed his expectations of the faculty with Lawler. Canales did, however, discuss Lawler's charges of discrimination but there is no evidence that Canales made any statements that would have caused an employee to reasonably feel compelled to resign.

Lawler also maintains in his affidavit that EPCC's insistence that he use the new syllabus to teach the Welding Using Multiple Processes course is the condition which compelled him to resign his employment, or as he put it, the "last straw." He related how Canales ordered him on October 18, 2005 to use the new syllabus despite his objections. Lawler explained in his affidavit that the Welding using Multiple Processes course is EPCC's introductory welding course. It is the foundation for all of the other credit welding courses offered by the College and the students are expected to learn using the equipment in the welding laboratory. It was impossible for an instructor to follow the new syllabus calendar because the College had limited equipment. As an example of the problem, Lawler explained that the syllabus calendar required lab practice on four dates in October for torch set-up and operation, torch cutting and plate preparation, and torch flame cutting and oxy fuel welding, but there were only five torches for the class's eleven students. In his

experience, the students needed three hours of practice on the torch each scheduled day to pass the course and to be ready for the higher level credit welding courses. If the instructor used the new syllabus, the students would be behind at the conclusion of the class and the instructor would not have taught the students what they needed to learn. Lawler concluded that EPCC's requirement that he use the new syllabus had a materially adverse effect on the conditions of employment because he could not teach the course using the syllabus. Consequently, he quit his position.

We find that a fact issue exists regarding whether Canales' pointed insistence that Lawler use a syllabus with which he fundamentally disagreed for the reasons set forth in his affidavit would create the type of intolerable conditions that would cause him to reasonably feel compelled to resign. Given the existence of this fact issue, the trial court did not err by denying the plea to the jurisdiction as it relates to the age discrimination and retaliation claims. We overrule Issues One and Two and affirm the order denying the plea to the jurisdiction.


November 30, 2010

ANN CRAWFORD McCLURE, Justice

Before McClure, J., Chew, J., and Barajas, C.J. (Ret.)
Chew, Judge, sitting by assignment
Barajas, C.J. (Ret.), sitting by assignment