

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| VASHTI E. MADDEN, | § | No. 08-13-00169-CV |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 34th District Court |
| | § | |
| EL PASO INDEPENDENT SCHOOL DISTRICT, | § | of El Paso County, Texas |
| | § | (TC# 2012-DCV01483) |
| Appellee. | § | |

# **O P I N I O N**

Appellant Vashti Madden filed suit alleging that her employer, the El Paso Independent School District, discriminated against her on the basis of her national origin and gender, then retaliated against her for filing a complaint with the Equal Employment Opportunity Commission. The trial court rendered summary judgment in favor of the District. We affirm

## **BACKGROUND**
### *Factual Background*
### **Appellant's Employment with the District**

Appellant began her employment as a teacher with the District in 2003, and was transferred to Irvin High School in 2005, where she taught mathematics. Per the terms of her contract, "[t]he District shall have the right to assign or reassign the Employee to positions, duties, or additional duties and to make changes in responsibilities, work, transfers, or

classification at any time during the contract term." In 2008, Appellant became certified to teach Spanish. Appellant was the only teacher in the math department who was also certified in Spanish.

## The 2010-2011 School Year

Appellant alleged that in June 2010, Marina Rocha, assistant principal of curriculum and instruction, offered to let Appellant keep her math stipend in exchange for teaching a combination of three Spanish and three math classes, rather than only math classes, during the upcoming school year. Appellant accepted that arrangement.

In August 2010, Luis Loya became the new principal and began making personnel changes. According to Appellant's affidavit, one math teacher left the District, and Loya hired six new math teachers, two of whom transferred to different schools the following school year. One of the teachers was a new math coach to replace a previous coach who was transitioned back into the classroom prior to her retirement. Appellant alleged that Loya also terminated two Spanish teachers in May 2011. During this time, in May and June 2011, Appellant asked Loya to write her a letter of recommendation. He declined, saying he did not know her well enough and did not know what to say.

Appellant alleged that when the ex-math coach who had been transitioned back into the classroom retired in December 2011, Loya replaced her with another, younger math teacher who was not certified in January 2012, and that overall, three of the teachers were not certified to teach high school math.[1] Appellant also alleged that although she had ten years' experience teaching high school math and a bachelor's degree in mechanical engineering, Loya assigned

---

[1] Appellant does not name those teachers in her affidavit. However, she did attach State Board of Education licensing information for five teachers as part of the summary judgment record. Three of those teachers are male. The licensing information shows that as of January 2012, all three male teachers had either probationary or standard licenses allowing them to teach mathematics for grades 8 through 12.

2

higher-level math classes to younger male teachers instead of her.

On April 6, 2011, Appellant received a new salary card electronically with the options "agree" and "do not agree." She signed the card, and the next day received notification that she had been changed from math to Spanish. On May 16, 2011, at the close of the 2010-2011 school year, Associate Superintendent Robert Almanzan signed Appellant's assignment letter for the upcoming school year. Appellant's assignment is listed as "High School Spanish Combination." The letter also states that "your assignment may change within your school as the schedule is reviewed and developed. If any of these changes occur, you will be notified of your assignment sometime during the summer."

### The 2011-2012 School Year

That summer, the school notified Appellant that she would be teaching six Spanish classes and not the mixed Spanish and math course-load she had originally been assigned. Appellant disputed her assignment and began contacting various school officials. On June 14, 2011, a representative from the El Paso Federation of Teachers and Support Personnel e-mailed Jeannie Meza-Chavez, the District's human resource director of secondary personnel and recruiting, on Appellant's behalf, asking if Appellant needed to sign anything relinquishing her math stipend since she would no longer be teaching math. Meza-Chavez responded that Appellant would be teaching three math and three Spanish courses for the upcoming school year, and that "[p]aperwork to address this is being filled out [.]" On August 10, 2011, Loya e-mailed Appellant and stated that she had been assigned to teach Spanish full-time for the school year.

The school year began on August 22, 2011. Appellant testified in her affidavit that on that day, she found out she would be teaching five Spanish courses and a geometry course. Three days later, on August 25, she learned that the geometry class included special education

3

inclusion students.  On August 26, Appellant received a revised assignment letter, backdated to August 22, 2011 and effective April 6, 2011, from Jeannie Meza-Chavez confirming that Appellant was to teach "HS Math Combo" 2011-2012 school year.  Appellant testified that Loya failed to provide her with professional development, a textbook, or an inclusion teacher for ten days after school began.  The inclusion students were later removed from the class.

On September 19, 2011, Appellant filed a grievance against Loya, seeking "to immediately be given the other 3 Math classes promised to her in Ms. Meza-Chavez's email." The grievance was denied September 30, 2011.  Appellant alleged that after filing her grievance, she experienced five walk-throughs from September 28 through October 31 when two other teachers had one walk-through each in the month of October, and that Appellant ultimately went through seven walk-throughs in five months.

Appellant filed a discrimination complaint with the EEOC on November 22, 2012.  Loya performed a walk-through on February 28, 2012[2] that Appellant characterized as negative.  She alleged that this occurred on the same day the District's school board was scheduled to talk about her pending litigation in executive session.

At deposition, Appellant conceded that no one in the administration had ever made any racially or sexually discriminatory comments toward her.

### Procedural Background

Appellant filed suit against the District under the Texas Commission on Human Rights Act (TCHRA).  In her petition, Appellant alleged that by reassigning her from purely mathematics classes to a combination of mostly Spanish classes and one mathematics class without her consent, delaying full payment of her math stipend, and conducting "excessive"

---

[2] In her affidavit, Appellant stated the walk-through happened on February 28, 2011.  However, an email confirming the walk-through lists the evaluation date as February 28, 2012.

4

walk-throughs, the District discriminated against her because she was a woman and because she was of Mexican origin and then retaliated against her for opposing discriminatory treatment.

The District answered and moved for traditional summary judgment,[3] contending that Madden failed to raise fact issues establishing discrimination or retaliation under the *McDonnell Douglas*[4] pretextual employment action framework. The trial court granted summary judgment for the District. This appeal followed.

## DISCUSSION

In one issue, Appellant contends the trial court erred in rendering summary judgment against her because she raised preclusive fact issues on sex and national origin discrimination and on retaliation.[5] We disagree.

### *Standard of Review*

We review summary judgment grants *de novo*. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). On traditional summary judgment review, we determine whether the movant has established that no genuine issue of material fact exists and that she is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). If so, the movant is entitled to summary judgment. *Id*.

### *Analysis*

"The TCHRA prohibits employment discrimination with respect to compensation or the

---

[3] The District characterized its motion for summary judgment as a hybrid motion for summary judgment raising traditional and no-evidence grounds. Although the issue is not dispositive, we construe the District's summary judgment motion as presenting only traditional grounds because the alternative no-evidence grounds presented in the motion were too general to meet the TEX.R.CIV.P. 166a standard.

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973).

[5] Appellant also raises an age discrimination argument in her brief. However, because age discrimination was not pleaded in the trial court, and because Appellant does not make clear how we may otherwise address this unpleaded claim, that claim cannot form the basis of reversal on appeal, and we do not address any age discrimination points Appellant raises here.

terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age." *Bowen v. El Paso Elec. Co.*, 49 S.W.3d 902, 908 (Tex.App.--El Paso 2001, pet. denied). In interpreting the TCHRA, we may resort to federal court interpretations of analogous federal anti-discrimination laws. *Id.* Here, Appellant presents both discrimination and retaliation claims. We address her claims in turn by type.

**1.**
**National Origin and Sex Discrimination**

Appellant presents discrimination claims on two separate grounds: national origin and sex.

In a case such as this where there is no direct evidence of discrimination, we employ the three-step *McDonnell Douglas* discrimination pretext test. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001). First, the plaintiff must establish a *prima facie* case of discrimination. *Id.* A plaintiff establishes a *prima facie* discrimination case by showing she "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004); *see also Bowen*, 49 S.W.3d at 908. If the plaintiff overcomes this hurdle, discrimination is presumed, and the burden shifts to her employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Quantum Chem. Corp.*, 47 S.W.3d at 477. Once an employer offers an ostensibly legitimate reason for their actions, the presumption disappears, and "[t]he burden then shifts back to the complainant to show that the employer's stated reason was a pretext for discrimination." *Id.* "A plaintiff can avoid summary judgment if the evidence taken as a whole creates a fact issue as to whether the employer's stated reason was not what actually motivated

6

the employer *and* creates a reasonable inference that discriminatory intent was a determinative factor in the adverse employment decision." [Emphasis in original]. *Bedgood v. Tex. Educ. Agency*, No. 03–14–00030–CV, 2015 WL 739635, at *2 (Tex.App.--Austin Feb. 19, 2015, pet. denied)(mem. op.).

Neither party disputes that Appellant is part of two protected classes based on sex and national origin, nor do they dispute she was qualified for her position. Assuming without deciding that Appellant passed the *prima facie* threshold by showing disparate treatment and establishing that class reassignment from math to Spanish, a later-remediated reduction in a math stipend, and multiple walk-throughs constituted adverse employment actions,[6] the record does not show that Loya or other Irvin High administrators undertook these actions against Appellant because she was Hispanic or because she was a woman. The District provided a legitimate reason for the administrators' decisions, and Appellant failed to raise a fact issue suggesting the reason was pretextual.

"To establish a fact question on the issue of pretext, the non-movant must present evidence indicating that the non-discriminatory reason given by the employer is false or not credible, and that the real reason for the employment action was unlawful discrimination." *Elgaghil v. Tarrant Cnty. Jr. Coll.*, 45 S.W.3d 133, 140 (Tex.App.--Fort Worth 2000, pet. denied).

Appellant asks us to infer national origin discrimination based on the fact that she is Hispanic and she was asked to teach a Spanish class. However, Appellant is certified to teach Spanish, and her contract states that the District may reassign her at any time. The evidence also

---

[6] *Cf. Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 761-62, 118 S.Ct. 2257, 2268-69, 141 L.Ed.2d 633, (1998)(noting in federal context that a "tangible employment action [that] constitutes a significant change in employment status," including "reassignment with significantly different responsibilities[] or a decision causing a significant change in benefits" can constitute an adverse employment decision under certain circumstances).

shows that two Spanish teachers left Irvin High School, and that of all the math teachers at the school, Appellant was the only one also certified in Spanish. The District's claim that, under the contract, it reassigned Appellant to fill vacant Spanish positions given her certification in the language is credible. In light of these factors, Appellant's bare assertion that the District discriminated against her because she was Hispanic by assigning her to teach mostly Spanish classes is mere conjecture. Appellant raised no fact issue to defeat summary judgment on her national origin discrimination claim.

Likewise, Appellant cannot raise an ultimate fact issue on sex discrimination. Appellant testified in her affidavit that Loya hired three new, unlicensed male math teachers and gave them advanced math courses while transferring her to teach Spanish despite her seniority and degree in mechanical engineering. But Appellant's claim that the male teachers were not licensed is at best unsupported by the record and at worst belied by it: Appellant's own summary judgment evidence shows licensing information for three unidentified male teachers who had either probationary or standard licenses to teach high school mathematics. Further, the District provided a credible explanation for Loya's decision to have Appellant teach five Spanish courses and one geometry course—Appellant was licensed in Spanish, there were vacant positions in the Spanish department, and Appellant had already been teaching three Spanish classes the previous school year. As with her national origin discrimination claim, Appellant has failed to raise a fact issue showing that this explanation was not worthy of credence and that Loya's true intent was sexually discriminatory.

Appellant's "subjective belief" that the District's "evidence is false and its reasons pretextual, sincere as that belief may be, does not create a fact issue to defeat summary judgment." *Carlton v. Hous. Cmty. Coll.*, No. 01-11-00249-CV, 2012 WL 3628890, at *14

8

(Tex.App.--Houston [1st Dist.] Aug. 23, 2012, no pet.)(mem. op.). Absent evidence that goes beyond bare assertions, we cannot reverse summary judgment and remand for trial on discrimination.

## 2.
## Retaliation

Finally, we address Appellant's retaliation claim.

"An employer also commits an unlawful employment practice if it retaliates or discriminates against a person who, pursuant to the TCHRA, (1) opposes a discriminatory practice, (2) makes or files a charge, (3) files a complaint, or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." *Bedgood v. Tex. Educ. Agency*, No. 03–14–00030–CV, 2015 WL 739635, at *2 (Tex.App.--Austin Feb. 19, 2015, pet. denied)(mem. op.)(citing TEX.LAB.CODE ANN. § 21.055 (West 2015)). To establish a *prima facie* case for retaliation, the employee must show "(1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action." *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex.App.--Houston [14th Dist.] 2007, pet. denied). "An adverse employment action short of discharge will support a claim for retaliation if a reasonable employee would have found the challenged action materially adverse[.]" *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 731 (Tex.App.--Fort Worth 2006, no pet.). A materially adverse action is one that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *El Paso Comm. Coll. v. Lawler*, 349 S.W.3d 81, 88 (Tex.App.--El Paso 2010, pet. denied). The materially adverse standard ensures that only significant harms "is judged from the standpoint of a reasonable employee" can be redressed in court. *Niu*, 206 S.W.3d at 731. The standard is also general enough to provide flexibility in assessing harm because "context matters" and "the significance of any given act of

retaliation will often depend upon the particular circumstances[.]" *Id.*

It is undisputed that Appellant engaged in the protected activity of filing an EEOC complaint. However, as the District points out, the only alleged negative employment action that Appellant alleged occurred after her filing of an EEOC charge on November 22, 2011, were two walk-throughs occurring on December 7, 2011, and February 2012. Those two walk-throughs did not constitute materially adverse employment actions as contemplated by the TCHRA, as the District's summary judgment evidence shows that walk-throughs are required under state law, and that other foreign language teachers were also subject to two walk-throughs in one month. Based on the evidence before us, a reasonable employee might assign significance to a walk-through, but not consider it materially adverse to the point of dissuading a complaint. *Cf. Lawler*, 349 S.W.3d at 88. Even if the walk-throughs did rise to the level of materially adverse employment actions, Appellant cannot raise any non-speculative evidence linking the walk-throughs to her EEOC complaint. Again, the District is required to perform walk-throughs, and the number of post-complaint walk-through Appellant experienced was no higher than those of other foreign language instructors.

Appellant cannot raise a fact issue on retaliation.

## CONCLUSION

Issue One is overruled. The judgment of the trial court is affirmed.


July 22, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)

10